```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA
```

| | |
|---|---|
| TRADE-WINDS ENVIRONMENTAL RESTORATION, INC. | CIVIL ACTION |
| | NO. 06-3299 |
| VERSUS | |
| | SECTION B(2) |
| FRANK STEWART, JR, STEWART DEVELOPMENT, L.L.C., AND STIRLING PROPERTIES, INC. | |

## ORDER AND REASONS

Before the Court is Defendants Stewart Development, LLC, Stirling Properties, Inc., and Travelers Indemnity Company of Connecticut's Motion for Partial Summary Judgment. (Rec. Doc. No. 99). After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Defendants' Motion for Partial Summary Judgment is **GRANTED.**

## *BACKGROUND*

Defendant Stewart Development, LLC ("Stewart Development") owned a building known as Heritage Plaza located in Metairie, Louisiana. Defendant, Stirling Properties, Inc. ("Stirling") was the leasing manager and agent for Heritage Plaza. Defendant Travelers Indemnity Company of Connecticut ("Travelers") issued an insurance policy to Stewart Development covering Heritage Plaza. Heritage Plaza sustained water damage as a result of Hurricane

1

Katrina.  The damage resulted in a significant mold problem that required remediation.

In September 2005, Plaintiff Trade-Winds Environmental Restoration, Inc. ("Trade-Winds") contacted David Kopp, an employee of Defendant Stirling, with an interest in performing the mold remediation work at Heritage Plaza.  On September 22, 2005, Stirling and Trade-Winds entered into a contract for the remediation.  The contract was an open-ended "time and materials" contract the price of which was to be determined based on a rate sheet provided by Trade-Winds for its labor and materials charges.

At the time the contract was signed, Plaintiff did not hold a license to perform as a general contractor or a mold remediation contractor in Louisiana.  Plaintiff later applied for a mold remediation license on September 28, 2005 and received it on February 16, 2006.  Plaintiff alleges that it completed the work on March 11, 2006, nearly a month after obtaining the license.

Defendants allege that the original estimated cost of the work submitted by Trade-Winds was $750,000.  The final price submitted by Trade-Winds, however, allegedly exceeded $9 million dollars. Defendants allege that this increase was due to questionable billing practices on the part of Trade-Winds.

Defendants allege that they repeatedly requested that Trade-Winds produce backup documentation to support its invoices.  After Defendants paid $7.5 million on the contract and Plaintiff still

had not provided backup documentation, Defendants then refused to provide further payment.  On June 27, 2006, Plaintiff then filed suit for the balance allegedly due under the contract.  On December 11, 2007, Defendants filed this Motion for Partial Summary Judgment.

Defendant Stewart Development contends that it is entitled to summary judgment dismissing Plaintiff's breach of contract claim against Stewart Development because the contract between Trade-Winds and Stewart Development was entered into at a time when Trade-Winds did not have a valid Louisiana contractors license or a mold remediation contractors license and is, therefore, null and void.  Additionally, Defendant Stirling argues that all claims against Stirling should be dismissed because at all times, Stirling was acting as a disclosed agent on behalf of Stewart Development, the principal, and, therefore, cannot be held liable for the obligations of the principal.  Finally, Defendant Travelers contends that Plaintiff's claims against Travelers should be dismissed because Trade-Winds is not a named insured under the policy issued by Travelers to Stewart Development and, therefore, has no right of action against Travelers.

Plaintiff contends that even though it did not have a valid contractors license at the time the contract was entered into, a genuine issue of fact exists as to whether the contract was, nevertheless, valid given the suspension of enforcement by the

Louisiana State Licensing Board for Contractors of the license requirements in the days following Hurricane Katrina. Additionally, Plaintiff argues that an issue of fact exists as to whether Defendant Stirling exceeded the scope of its authority as agent for Stewart Development in contracting with Trade-Winds in light of its knowledge that Trade-Winds did not have a valid contractors license. Finally, Plaintiff argues that there is sufficient evidence to create a genuine issue of fact as to whether Defendant Travelers has engaged in a scheme to deprive Plaintiff of payments under the contract.

### *DISCUSSION*

**A.    Summary judgment standard**

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(c))); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327, (1986).  A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986).   Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial.  *Webb v. Cardiothoracic*

*Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

**B.   Claims against Defendant Stewart Development**

Defendants argue first that the contract between Trade-Winds and Stewart Development is null and void because it was entered into at a time when Trade-Winds did not have a Louisiana contractors license or a mold remediation contractors license.

La. Rev. Stat. §§ 37:2150-:2173 address the licensing requirements for contractors in Louisiana. La. Rev. Stat. § 37:2160 provides that it is "unlawful for any person to engage or to continue in this state in the business of contracting, or to act as a contractor as defined in this Chapter, unless he holds an active license as a contractor under the provisions of this Chapter." Further, a "contractor" is defined as "any person who undertakes to, attempts to, or submits a price or bid or offers to construct, supervise, superintend, oversee, direct, or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, or furnishing labor, or furnishing labor together with material or

equipment, or installing the same for any building...for which the entire cost of same is fifty thousand dollars or more when such property is to be used for commercial purposes...." La. Rev. Stat. § 37:2150.1(4)(a).

La. Rev. Stat. §§ 37:2181-:2192 address the licensing requirements for persons who perform mold remediation. La. Rev. Stat. § 37:2185 provides that "[b]eginning July 1, 2004, no person shall engage in or conduct, or advertise or hold himself out as engaging in or conducting the business of, or acting in the capacity of a person who conducts mold remediation unless such person holds a mold remediation license as provided for in this Chapter." The term "mold remediation" is defined as the "removal, cleaning, sanitizing, demolition, or other treatment, including preventive activities, of mold or mold-contaminated matter that was not purposely grown at that location." La. Rev. Stat. § 37:2182(4).

Under Louisiana law, a contracting agreement entered into without the benefit of a contractor's license is null and void. *Hagberg v. John Bailey Contractor*, 435 So. 2d 580, 584-85 (La. App. 3 Cir. 1983); *Alonzo v. Chifici*, 526 So. 2d 237, 243 (La. App. 5 Cir. 1988); *see also W. Baton Rouge Parish Sch. Bd. v. T.R. Ray, Inc.*, 367 So. 2d 332, 334 (La. 1979) (finding contract invalid because contracting party had not secured from the Board of Architectural Examiners a certificate of registration and license).

Thus, a party suing to enforce such a contract may only receive damages under the theory of unjust enrichment for the actual cost of materials, services, and labor.  *Alonzo*, 526 So. 2d at 243.

Trade-Winds does not dispute Defendants' claim that it was a "contractor" as defined under La. Rev. Stat. § 37:2150.1(4)(a) or that it performed "mold remediation" as defined under La. Rev. Stat. § 37:2182.  Nor does Trade-Winds dispute that it did not have a license to perform as a general contractor or a mold remediation contractor on September 22, 2005.  Plaintiff concedes that it did not apply for a mold remediation license until after the contract was entered into on September 28, 2005 and that it did not receive the license until February 16, 2006.  Plaintiff argues, however, that the September 22 contract was not null and void under Louisiana law because of relaxed enforcement of the licensing requirements by the Louisiana State Licensing Board for Contractors in the days immediately following Hurricane Katrina.

The Louisiana State Licensing Board for Contractors is the state administrative body that ensures compliance with the license requirements for contractors and mold remediation.  *See* La. Rev. Stat. §§ 37:2150-:2151.  Plaintiff has attached to its Opposition the affidavit of Charles Marceaux, the Executive Director of the Louisiana State Board of Licensing for Contractors.  The affidavit states that following hurricanes in previous years, Governor Foster had issued executive orders declaring the suspension of licensing

laws pertaining to debris removal. In the aftermath of Hurricane Katrina, however, Governor Blanco issued no such order. The affidavit states that "in the absence of Executive Orders from the Governor's Office and based upon historical precedent, the Louisiana State Board of Licensing for Contractors decided to delay active and aggressive enforcement of licensure laws pertaining to debris removal and demolition for a period of 90 days, more particularly from September 1, 2005, through December 1, 2005." Marceaux Affid. ¶ 8. Additionally, it states that the Board "did not take any aggressive action concerning enforcement of licensure laws during the 90 day suspension period...." Marceaux Affid. ¶ 9. Additionally, it states that the Board "posted information on its website...pertaining to licensing laws in State of Louisiana [sic] and the requirement that Contractors must apply for a license," however, the Board "decided to take a common sense approach which resulted in the Board's decision to delay active and aggressive enforcement of licensure laws...." Marceaux Affid. ¶ 10. Finally, it states that during the suspension, the Board still "took such action as it believed necessary if the facts appeared that the actions of a contractor would be detrimental to the public (no such action having been taken by the Board with regard to Trade-Winds Environmental Restoration, Inc)." Marceaux Affid. ¶ 16. Relying on this affidavit, Plaintiff argues that the contract was not prohibited by any Louisiana law in force and effect at the time it

was entered into.

The parties in the present case rely on two cases decided by this Court which also involved Trade-Winds and which also addressed the issue of the suspension of license requirements after Katrina. *Tradewinds Envtl. Restoration, Inc. v. Biomedical Applications of Louisiana, Inc.* involved cleanup work that Trade-Winds performed for the operator of several kidney dialysis clinics after Hurricane Katrina. 2007 WL 861156 (E.D. La. 2007). As in the present case, Plaintiff relied on an affidavit of Charles Marceaux. *Id*. at *4. The Court refused to grant summary judgment on the issue of whether a valid contract existed. *Id*. The Court found that "genuine questions remain[ed] as to whether the requirements for mold remediation licenses were suspended in the months following Hurricane Katrina and whether the Licensing Board's informal decision to suspend enforcement of the licensure laws had any effect on the statutory requirements." *Id*.

*Tradewinds Envtl. Restoration, Inc. v. St. Tammany Park, L.L.C.* involved cleanup by Trade-Winds at an apartment complex in the months following Katrina. 2007 WL 1191896 (E.D. La. 2007). The Plaintiff again relied on a Charles Marceaux affidavit. *Id*. at *4. The Court in that case, however, did not find that the facts stated in the Marceaux affidavit barred the granting of summary judgment. *Id*. Specifically, the Court noted that Marceaux admitted in the affidavit that the Board still enforced the laws as

9

it saw necessary. *Id*. Additionally, there was no evidence that any legislative or executive action had suspended the license requirement. *Id*. The Court concluded that "[a]lthough the administrative agency in charge of licensing had decided to monitor rather than enforce, the fact remains that Tradewinds was prohibited by law from contracting to perform mold remediation at the relevant time." *Id*.

Considering these opinions, which reached opposite conclusions, as well as the arguments of the parties, the Court will now consider whether Defendants are entitled to Summary Judgment on the issue of whether a valid contract existed in the present case.

Summary judgment is appropriate when there are no issues of fact, and the dispute between the parties is purely over issues of law. *See Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 937 (5th Cir. 1994). Furthermore, even if the issue of law is complex or requires difficult questions of interpretation, summary judgment is still appropriate if there is no triable issue of fact. *See Kansas v. Colorado*, 1994 WL 16189353, *154 (1994). In this case, the parties do not dispute the fact that the Board had suspended enforcement of the license requirements. The dispute involves the effect which that suspension in enforcement had on the licensing requirements themselves. This dispute presents an issue of law which the Court can decide at the summary judgment stage.

A well-established tenet of administrative law is that administrative bodies have broad discretion in deciding to what extent to undertake enforcement. *Massachusetts v. EPA*, 127 S. Ct. 1438, 1459 (2007); *see also State v. Honore*, 564 So. 2d 345, 348 (La. App. 5 Cir. 1990). A decision not to enforce is typically afforded wide latitude by a reviewing court. *Massachusetts*, 127 S. Ct. at 1459. The Court finds, however, that an exercise of this latitude by an agency does not negate the force of law of the underlying statutory requirements that such an agency is created to enforce. The Court finds that the Board's policy of lax enforcement, while likely a valid exercise of administrative power, did not change the fact that the statutes in place still represented the legal requirements for contractors in order to enter into valid contracts. As the court found in *Tradewinds v. St. Tammany Park*, at the time the contract was entered into, Trade-Winds was still prohibited by Louisiana law from contracting to perform mold remediation. Thus, the Court finds in the present case that the contract is null and void.

Plaintiff attempts to distinguish prior Louisiana caselaw holding that contracts entered into without a license were null and void by pointing out that the contract in the present case was entered into in the months immediately following Hurricane Katrina. Plaintiff argues that to void this contract would be against the public policy of facilitating cleanup after such disasters.

11

Additionally, it would cause a chilling effect on the willingness of remediation specialists to perform work in Louisiana.  The Court, however, notes the competing policy interest of protecting the public from the unlawful acts of contractors.  This policy is expressed in the licensing statutes themselves.  La. Rev. Stat. § 37:2150 provides that "[t]he purpose of the legislature in enacting [the contractor licensing laws] is the protection of the health, safety, and general welfare of all those persons dealing with persons engaged in the contracting vocation, and the affording of such persons of an effective and practical protection against the incompetent, inexperienced, unlawful, and fraudulent acts of contractors with whom they contract."  Additionally, La. Rev. Stat. § 37:2181 states that the "purpose of [the mold remediation licensing laws] is to require qualifying criteria in a professional field in which unqualified individuals may injure or mislead the public.  The[se] provisions...shall contribute to the safety, health, and welfare of the people of this state."  Thus, the policy decisions made by the legislature are expressly stated in the statutes.  Further, it is not the place of this Court to second-guess such decisions.  *Int'l River Ctr. v. Johns-Manville Sales Corp.*, 861 So. 2d 139, 142 (La. 2003).

The Governor of Louisiana has the power to issue executive orders in order to respond to the dangers presented by emergencies or disasters by suspending regulatory statutes that impede such a

response. *See* La. Rev. Stat. § 29:724.  Such orders have the force and effect of law.  *Id*.  Although the Governor had previously issued executive orders in the aftermath of natural disasters, which declared the suspension of licensing laws pertaining to debris removal, no such order was issued after Hurricane Katrina. Thus, while the Executive Branch does have the power to temper the legislative intent in times of emergency, no such order was given in this case.

The Court also notes that the language of the Marceaux affidavit itself supports the conclusion that the license laws remained valid statutory requirements.  While Marceaux admits that enforcement was relaxed, nowhere in his affidavit does he state that the statutes did not represent the legal requirements for contractors.  Additionally, he admits that the Board "took such action as it believed necessary if the facts appeared that the actions of a contractor would be detrimental to the public...." Marceaux Affid. ¶ 16. This statement is essentially an admission that while the Board may not have aggressively sought out violations, it did take certain steps to enforce the laws that were in place.

Plaintiff argues that even if the license laws remained valid, Defendants should, nevertheless, be estopped from attempting to avoid their contractual obligations in light of the fact that Stirling knew of Trade-winds' licensing status at the time the work

13

was being performed.  Under Louisiana law, the licensing rules, however, cannot be set aside through private agreement.  *Hagberg*, 435 So. 2d at 584.  Thus, whether Stirling knew of Trade-Winds' licensing status or not, the fact remains that even if the Defendants desired to contract around those licensing requirements, such an attempt would have been ineffective.

In sum, the Court finds that the contract between Trade-Winds and Stewart Development is null and void.  Plaintiff's claims against Defendant Stewart Development are, therefore, limited to damages for the actual cost of materials, services, and labor.

**C.   Claims Against Defendant Stirling Properties**

Defendants next argue that all claims against Defendant Stirling Properties should be dismissed.  Plaintiff contends, however, that there is evidence that Stirling, in its capacity as agent for Stewart Development, exceeded its authority in contracting with Trade-Winds.  Specifically, Plaintiff points to deposition testimony that David Kopp, a Stirling employee, knew in late September 2005 that Trade-Winds had applied for but not yet received a license.  Thus, Plaintiff argues that there is an issue of fact concerning whether by contracting with an entity that did not have a license, Stirling exceeded its authority as agent for Stewart Development and should, therefore, be liable "for all unpaid invoices, attorneys' fees, and costs relating to Heritage Plaza."  Suppl. Compl. ¶ 18.

The Louisiana Civil Code provides that "[a] mandatary who contracts in the name of the principal within the limits of his authority does not bind himself personally for the performance of the contract." La. Civ. Code Art. 3016. The Code also provides, however, that "[a] mandatary who exceeds his authority is personally bound to the third person with whom he contracts, unless that person knew at the time the contract was made that the mandatary had exceeded his authority or unless the principal ratifies the contract." La. Civ. Code Art. 3019. There is no dispute in the present case that Stirling, as the property manager for Heritage Plaza, acted as an agent for Stewart Development in contracting with Trade-Winds. Defendants contend that as an agent, Stirling cannot be held personally liable for the contract which it entered into on behalf of Stewart Development, the principal. Plaintiff, however, argues that under Art. 3019, Stirling exceeded its authority and should, therefore, be held liable.

The Civil Code articles described above refer to *contracts* executed by a mandatary on behalf of a principal. As the Court found above, however, the contract between the parties in the present case was invalid, therefore, the Plaintiff's claim is for unjust enrichment rather than contractual damages. Thus, because a valid contract was never executed, the Court finds that Stirling, as the agent, cannot be held liable for exceeding its authority in executing said contract.

15

Plaintiff is essentially arguing that if, as the Court found, Plaintiff is limited to recovering only its actual expenses from Stewart Development, the principal, then Plaintiff should be able to seek further damages for all invoices, etc. from Stirling, the agent. Plaintiff, however, cites no caselaw or Code article that supports the proposition that an agent should be held liable for further damages when a contract is found to be null and the principal is responsible only for paying actual expenses. Thus, the Court finds that the claims against Stirling in its capacity as agent for Stewart Development are dismissed.

**D.   Claims Against Defendant Travelers**

Defendant finally argues that the claims against Defendant Travelers should be dismissed. The crux of Plaintiff's claim against Travelers is that Travelers "has undertaken [Stewart Development's] representation in connection with Trade-Winds' claim and has, on behalf of itself and [Stewart Development], engaged in a scheme designed to deprive Trade-Winds of payments for the work performed at Heritage Plaza by claiming a set-off against the amounts owed to Trade-Winds that they know or have reason to know are false and without merit." Suppl. Compl. ¶ 25. In support of this contention, Plaintiff argues first that through deposition testimony, it has learned that Travelers has entered into an indemnification agreement with Stewart Development or Stirling. Although Plaintiff is presently unaware of the terms of this

agreement, it argues that the existence of such an agreement creates an issue of fact as to whether a *stipulation pour autrui* exists in favor of Trade-Winds. Second, Plaintiff points to allegations contained in a Petition filed in Civil District Court for the Parish of Orleans by the Louisiana Attorney General which alleges a general scheme on the part of insurance companies operating in Louisiana to hold down property damage claims. Plaintiff argues that the existence of the indemnification agreement together with these allegations create an issue of fact as to whether Travelers perpetuated such a scheme in the present case.

The Court notes that a *stipulation pour autrui* is never presumed and that a benefit to a third party must be made manifestly clear. *Doucet v. Nat'l Maint. Corp.*, 822 So. 2d. 60, 66 (La. App. 1 Cir. 2002). Additionally, an indemnification agreement does not necessarily create a *stipulation pour autrui*. *See Fontenot v. Hanover Ins. Co.*, 465 So. 2d 750, 751 (La. App. 3 Cir. 1984). The Court finds that the existence of an indemnity agreement alone without any evidence of its contents does not create an issue of fact as to whether a *stipulation pour autrui* exists. Further, Plaintiff must do more than simply point to general allegations made against a number of insurance companies in a separate lawsuit to survive summary judgment. In sum, the existence of an indemnity agreement which may or may not include a

*stipulation pour autrui* coupled only with these general allegations does not create an issue of fact regarding a scheme on Travelers' part to deprive Plaintiff of payments.  Plaintiff has simply not set forth sufficient facts to support a claim of such a scheme.

Thus, the Court finds that Plaintiff's claims against Defendant Travelers are dismissed.
Accordingly,

**IT IS ORDERED** that Defendants' Motion For Partial Summary Judgment is **GRANTED.**

Plaintiff's claims against Defendants Stirling and Travelers are dismissed.  Additionally, Plaintiff's claim against Defendant Stewart Development for breach of contract is dismissed.  Plaintiff's claims against Defendant Stewart Development are, therefore, limited to damages under the theory of unjust enrichment.

New Orleans, Louisiana this 24th day of January, 2008.

UNITED STATES DISTRICT JUDGE