```
             UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF LOUISIANA

TRADE-WINDS ENVIRONMENTAL                CIVIL ACTION
RESTORATION, INC.
                                         NO. 06-3299
VERSUS
                                         SECTION B(2)
FRANK STEWART, JR,
STEWART DEVELOPMENT, L.L.C., AND
STIRLING PROPERTIES, INC.
```

ORDER AND REASONS

Before the Court are Defendant/Counter-Claimants Stewart Development, LLC and Travelers Indemnity Company of Connecticut's Motion for Partial Summary Judgment on the Application of Louisiana Civil Code Article 2033 (Rec. Doc. No. 160) and Plaintiff Trade-Winds Environmental Restoration, Inc.'s Motion for Partial Summary Judgment Dismissing Counter-Claims Filed by Stewart Development, LLC and Travelers Indemnity Company of Connecticut (Rec. Doc. No. 163). After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Defendant/Counter-Claimants Stewart Development, LLC and Travelers Indemnity Company of Connecticut's Motion for Partial Summary Judgment on the Application of Louisiana Civil Code Article 2033 is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff Trade-Winds Environmental Restoration, Inc.'s Motion for Partial Summary Judgment Dismissing Counter-Claims Filed by Stewart Development, LLC and Travelers

1

Indemnity Company of Connecticut is **DENIED**. Whether the "no recovery" provision of Art. 2033 precludes recovery by the Defendants in this case is an issue of fact.

## *BACKGROUND*

Defendant Stewart Development, LLC ("Stewart Development") owned a building known as Heritage Plaza located in Metairie, Louisiana. Defendant, Stirling Properties, Inc. ("Stirling") was the leasing manager and agent for Heritage Plaza. Defendant Travelers Indemnity Company of Connecticut ("Travelers") issued an insurance policy to Stewart Development covering Heritage Plaza. Heritage Plaza sustained water damage as a result of Hurricane Katrina. The damage resulted in a significant mold problem that required remediation.

In September 2005, Plaintiff Trade-Winds Environmental Restoration, Inc. ("Trade-Winds") contacted David Kopp, an employee of Defendant Stirling, with an interest in performing the mold remediation work at Heritage Plaza. On September 22, 2005, Stirling and Trade-Winds entered into a contract for the remediation. The contract was an open-ended "time and materials" contract the price of which was to be determined based on a rate sheet provided by Trade-Winds for its labor and materials charges.

At the time the contract was signed, Plaintiff did not hold a license to perform as a general contractor or a mold remediation contractor in Louisiana. Plaintiff later applied for a mold

remediation license on September 28, 2005 and received it on February 16, 2006. Plaintiff alleges that it completed the work on March 11, 2006, nearly a month after obtaining the license.

Defendants allege that the original estimated cost of the work submitted by Trade-Winds was $750,000. The final price submitted by Trade-Winds, however, allegedly exceeded $9 million dollars. Defendants allege that this increase was due to questionable billing practices on the part of Trade-Winds.

Defendants allege that they repeatedly requested that Trade-Winds produce backup documentation to support its invoices. After Defendants paid $7.5 million on the contract, and Plaintiff still had not provided backup documentation, Defendants then refused to provide further payment. On June 27, 2006, Plaintiff then filed suit for the balance allegedly due under the contract.

On January 24, 2008, the Court granted Defendants' Motion for Partial Summary Judgment (Rec. Doc. No. 107). This Order dismissed Plaintiff's breach of contract claim against Defendant Stewart Development on the grounds that the contract between Trade-Winds and Stewart Development was entered into at a time when Trade-Winds did not have a valid Louisiana contractors license or a mold remediation contractors license and was, therefore, null and void. The Court found that Plaintiff's claims against Defendant Stewart Development were essentially limited to damages for the actual cost of materials, services, and labor. Defendants claim that because

the payments made by Defendant to Trade-Winds exceeded Trade-Winds actual costs, the Court's ruling effectively terminated any claim by Trade-Winds for additional payment.  Defendants argue that they should, therefore, be entitled to recover overpayments made to Trade-Winds.  The parties have now filed cross-motions for summary judgment on this issue.

Plaintiff contends in its Motion for Partial Summary Judgment that Defendants' counterclaims for amounts paid under the contract in excess of Trade-Winds' costs must be dismissed pursuant to La. Civ. Code Art. 2033 which states that a party which has already rendered performance under a contract which is absolutely null because its object or cause is illicit or immoral may not recover that performance if it knew or should have known of the defect that made the contract null.  Plaintiff contends that this Court has already found that the contract in question was absolutely null because Trade-Winds lacked a mold remediation license at the time the parties entered into the contract.  Additionally, Trade-Winds contends that Defendants knew at the time the contract was signed that Trade-Winds lacked a valid license.  Thus, Defendants are not entitled to any repayment.

Defendants in their Motion for Partial Summary Judgment seek a declaration that La. Civ. Code Art. 2033 does not bar Defendants from recovering amounts previously paid to Trade-Winds in excess of Trade-Winds' costs.  Specifically, Defendants claim that the "no

4

recovery" provision in Art. 2033, which Plaintiff relies on, applies only to contracts which are *malum in se*, meaning inherently evil or wrong in themselves, and not to contracts which are *malum prohibitum*, which contracts are wrong only because they are prohibited by positive law. Defendants claim that the contract in this case was *malum prohibitum*. Thus, there is no bar to Defendants recovering sums paid to Trade-Winds under the contract.

### *DISCUSSION*

**A. Summary Judgment Standard**

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 2554-55 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or

other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

**B.  Louisiana Law on the Effect of Contractual Nullity**

The issue before the Court is the extent to which Defendants are entitled to the return of performance already rendered where the contract at issue is found to be null because Plaintiff lacked the proper license requirements.  The parties' arguments on this issue are based on their interpretations of Louisiana jurisprudence as well as several Louisiana Civil Code articles that address the effects of contractual nullity.

**1.  Louisiana Caselaw Prior to 1984 Code Revision**

The Louisiana Supreme Court addressed the effect that a finding of contractual nullity has on the rights of the contracting parties in *Boxwell v. Dep't of Highways*, 14 So. 2d 627 (La. 1943). In that case, the plaintiff sold certain materials to the Louisiana Highway Commission and later brought suit against the Commission for amounts allegedly due under the sales. *Id*. at 629. The Court found that the contract was made in violation of a public works statute requiring advertising and the obtaining of public bids, and that the contract was, therefore, void. *Id*. at 631. The Court noted, however, that there was no evidence of fraud on the part of either party in entering into the contract. *Id*. at 632.

Addressing prior caselaw which prohibited any recovery on such a contract, the Court stated the following:

> If the transactions in question were malum in se, that is, essentially and inherently evil and committed contrary to the principles of natural, moral and public law, we would have no hesitancy in following the stated view. But they were not. There was nothing inherently immoral or evil about them. Their illegality resulted because they were expressly forbidden by positive law. They were malum prohibitum....
>
> ...
>
> Under these circumstances, it would clearly be unjust to permit the [defendant] to reap the mentioned benefits and escape liability for them altogether. There is embedded deeply in our civil law the maxim that no one ought to enrich himself at the expense of another....On the other hand, considering the law's expressed prohibition for making the sales in the manner shown it would also be improper for the [plaintiff] to profit by the transactions.
>
> Equity would favor, we think, the placing of the parties in the positions that they occupied prior to the carrying out of their engagements, or in other words in status quo; but, of course, this is impossible because of the materials having been used. The only alternative is to compel payment by the [defendant]...of an amount that represents the materials' actual cost to the [plaintiff], without allowing any profits on or expenses connected with the sales.

*Id*. at 632. The Supreme Court followed the *Boxwell* reasoning in *Smith v. Vinton*, 43 So. 2d 18 (La. 1949) and later in *Coleman v. Bossier City*, 305 So. 2d 444 (La. 1975). In *Smith*, the Court found that the contract between the plaintiff and the city was null and

void because it was formed in violation of a public works statute. *Id*. at 18. The court noted that, like in *Boxwell*, there was no evidence of fraud on the part of the parties. *Id*. at 19. Relying on *Boxwell*, the Court allowed recovery for "amounts actually expended which inured to the benefit of the defendant." *Id*. at 21. Similarly, in *Coleman*, the Court invalidated a contract between the plaintiff and the city because it was secured without the requisite advertising and without proper approval of the State Bond and Tax Board. *Coleman*, 305 So. 2d at 445. Again, the parties were in good faith in the attempted contract, and there was no evidence of fraud. *Id*. at 447. The Court allowed recovery for expenses, finding that "[t]he party who receive[s] a payment not technically due because of the invalidity of the contract may be obliged to restore it, or at least the expenses incurred by the other." *Id*. at 447.

In *Hagberg v. John Bailey Contractor*, 435 So. 2d 580 (La. App. 3d Cir. 1983) the court applied the Supreme Court's reasoning discussed above to a contract between private individuals. *Hagberg* involved a construction contract dispute between the general contractor and subcontractor. The court found that because the subcontractor did not have a proper license at the time the contract was formed, the contract was illegal and unenforceable. *Id*. at 584. Relying on *Boxwell*, *Smith*, and *Coleman*, the court permitted the subcontractor to recover his actual costs but not any

overhead and profit. *Id.* at 587.

### 2. 1984 Code Revision

In 1984 there was a revision of the Civil Code articles dealing with obligations. As part of this revision, new articles on the nullity of contracts were enacted. Specifically, Article 2030 provided the following:

> A Contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral. A contract that is absolutely null may not be confirmed.
>
> Absolute nullity may be invoked by any person or may be declared by the court on its own initiative.

La. Civ. Code Art. 2030. Additionally, Article 2033 provided the following:

> An absolutely null contract, or a relatively null contract that has been declared null by the court, is deemed never to have existed. The parties must be restored to the situation that existed before the contract was made. If it is impossible or impracticable to make restoration in kind, it may be made through an award of damages.
>
> Nevertheless, a performance rendered under a contract that is absolutely null because its object or its cause is illicit or immoral may not be recovered by a party who knew of the defect that makes the contract null. The performance may be recovered, however, when that party invokes the nullity to withdraw from the contract before its purpose is achieved and also in exceptional situations when, in the discretion of the court, that recovery would further the interest of justice.

> Absolute nullity may be raised as a defense even by a party who, at the time the contract was made, knew or should have known of the defect that makes the contract null.

La. Civ. Code Art. 2033.

Plaintiff contends that pursuant to the "no recovery" provision found in the second paragraph of Art. 2033, Defendants' counterclaims for amounts already paid under the contract in excess of Trade-Winds' costs must be dismissed. Defendants have rendered performance in the form of partial payments to Trade-Winds, which payments apparently exceeded Trade-Winds' actual costs. Additionally, this Court has held that the contract in question was absolutely null because Trade-Winds lacked a mold remediation license at the time the contract was formed. Finally, Defendants knew at the time the contract was signed that Trade-Winds lacked a valid license. Thus, under the second paragraph of Art. 2033, even though the payments may have exceeded Defendants' costs, Defendants cannot recover such payments already rendered to Trade-Winds.

In response, Defendants contend that the "no recovery" provision of Art. 2033 which Plaintiff relies on is inapplicable to this case and that Defendants are, therefore, not barred from recovering amounts previously paid to Trade-Winds in excess of Trade-Winds' costs. Defendants argue that Arts. 2030 and 2033 must be read in the context of *Boxwell* and its progeny. Under Art. 2030, two types of contracts qualify as absolute nullities: (1)

contracts that violate a rule of public order, i.e. ones that are *malum prohibitum,* as well as (2) contracts whose object is illicit or immoral, i.e. ones that are *malum in se.* Art. 2033, however, which denies recovery of performance already rendered, applies only to contracts that are absolutely null because their object or cause is illicit or immoral, i.e. contracts that are *malum in se.* The contract in this case was *malum prohibitum*, as Trade-Winds lacked the proper license at the time of contracting. Thus, the "no recovery" provision in Art. 2033 does not apply, and under *Boxwell*, Defendants are entitled to amounts which they have already paid and which exceed Trade-Winds' costs.

**C.  Applicability of Art. 2033 to the Contract at Issue**

In order to determine whether Defendants are entitled to recover the payments in question, the Court must first determine the applicability of Art. 2033 to the facts of the case. An analysis of the plain language of Arts. 2030 and 2033 does not provide a clear answer as to the scope of the "no recovery" provision of Art. 2033. On one hand, as Defendants contend, Art. 2030 does make reference to at least two types of contracts that constitute absolute nullities: contracts that are absolutely null because they "violate a rule of public order" and ones that are absolutely null because of an "illicit or immoral" object. The second paragraph of Art. 2033, however, only precludes recovery in the case of contracts with an "immoral or illicit" cause or object.

11

Although Art. 2030 does not define the phrases "rule of public order" or "illicit or immoral cause" or directly equate these terms with *malum prohibitum* and *malum in se*, the fact that the "no recovery" provision in Art. 2033 only refers to contracts with an illicit or immoral cause does support Defendants' contention that the provision has a somewhat limited application.

On the other hand, a reasonable interpretation of Art. 2033 when read together with Art. 1968 supports Plaintiff's contention that the "no recovery" provision of Art. 2033 potentially applies to the contract at issue in this case even if it may be considered *malum prohibitum* under *Boxwell*.  Art. 1968 provides that "[t]he cause of an obligation is unlawful when the enforcement of the obligation would produce a result prohibited by law or against public policy."  La. Civ. Code Art. 1968.  Enforcing the contract in this case would produce a result prohibited by law.  That is, it would essentially equate to approving a contract made in violation of Louisiana licensing laws which were enacted to protect the general public.  Thus, the cause of the obligation is unlawful under Art. 1968.  Additionally, as Plaintiff contends, the term "unlawful" used in Art. 1968 is arguably synonymous with the term "illicit" used in  Art. 2033.[1]  Thus, the plain language of Art. 2033 supports the contention that the "no recovery" provision

---

[1] Black's Law Dictionary defines "illicit" as "illegal or improper."  Black's Law Dictionary 763 (8th ed. 2004).

12

applies to a broader class of contracts than just those that are inherently evil or immoral.  It applies instead to all contracts that are null because enforcing them would bring about a result that is contrary to Louisiana law.

Faced with this apparent ambiguity, the Court must make an educated "*Erie* guess" as to how the Louisiana Supreme Court would resolve the issue.  *Audler v. CDC Innovis, Inc.*, 519 F.3d 239, 249 (5th Cir. 2008).  The Court's task "when making an *Erie* guess as to how the Louisiana Supreme Court would rule...is to attempt 'to predict state law, not to create or modify it.'" *Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481, 493 (5th Cir. 2001)(citation omitted).  In order to determine the correct interpretation of Art. 2033 and its application to this case, the Court is guided by the comments to Art. 2033.  Comment A states that Art. 2033 was not meant to change existing law.  *See* La. Civ. Code Art. 2033 cmt. a. Additionally, Comment C cites as a basis for the "no recovery" provision found in the second paragraph of Art. 2033 several Supreme Court cases including *Boatner v. Yarborough*, 12 La. Ann. 249 (La. 1857) and *Gravier's Curator v. Carraby's Ex'*, 17 La. Ann. 118 (La. 1841).  *See* La. Civ. Code Art. 2033 cmt. c.  In *Boatner*, the plaintiff sought recovery of sums he had allegedly paid to the defendant in return for certain security interests held by defendant.  *Boatner*, 12 La. Ann. at *1.  The Supreme Court denied recovery by the plaintiff finding that the transfers were part of

13

a scheme perpetuated by the plaintiff and defendant to defraud the creditors of another individual.  *Id*. at *2-3.  The Court found that "judicial tribunals should not be called upon to adjust the balance of profit and loss between joint adventures in iniquity.  No action lies for the price of fraud."  *Id*.  The Court, therefore, denied plaintiff's request for recovery.  Similarly, in *Gravier's Curator*, the curator of an estate sought the return of the value of property which was conveyed in a simulated sale.  The purpose of the sale was to shield the property from the transferor's creditors.  *Gravier's Curator*, 17 La. Ann. at *4.  The Court stated the following: "That [the] contract was fraudulent and might have been successfully attacked as such by the creditors at the time, if they had the proofs now before us, we cannot doubt."  *Id*.  The court denied recovery reasoning that a court of justice should not lend its aid "to carry out the fraudulent intentions of the parties."  *Id*.

In neither *Boatner* nor *Gravier's Curator* did the Supreme Court make a specific distinction between contracts that are *malum in se* and those that are *malum prohibitum*.  Instead, the Court focused on whether the party seeking recovery had fraudulently entered into the contract in question and whether the Court was then being asked to essentially perpetuate that fraud.  The Court finds that it is this concern which formed the basis for the "no recovery" provision in Art. 2033.  Specifically, the intent behind the "no recovery"

14

provision as expressed in *Boatner* and *Gravier's Curator* was to prevent parties who fraudulently enter into contracts from then recovering under such contracts.  This interpretation of Art. 2033, which hinges recovery of payments rendered on the good or bad faith of the party seeking such recovery, is in keeping with the Supreme Court's reasoning in *Boxwell*, *Smith*, and *Coleman* discussed earlier. In each of these cases, while the Supreme Court stressed that the contracts in question were *malum prohibitum* rather than *malum in se*, it also premised its finding of recovery of costs on the fact that the parties entered into the contracts in good faith, thinking that they were valid.  Thus, had the evidence shown that the parties entered into the contracts in bad faith, knowing that they were null, recovery would have presumably been precluded, even though the contracts themselves were simply *malum prohibitum*.  In sum, the Court finds that the crucial issue in determining whether Art. 2033 precludes recovery is not necessarily whether the contract itself is considered *malum in se* or *malum prohibitum*. Instead, the issue is whether the party seeking recovery entered into the contract in bad faith and for fraudulent purposes knowing that the contract contained a defect and was, therefore, null.

This conclusion is supported by caselaw interpreting Art. 2033.  Specifically, Louisiana courts have applied Art. 2033 to contracts which could be considered *malum in se* and as well as those that could be considered *malum prohibitum.*  In doing so,

however, courts have essentially decided the issue of recovery under Art. 2033 on whether the party seeking such recovery had entered into the contract in good faith. In *Dugas v. Dugas*, 804 So. 2d 878 (La. App. 3d Cir. 2001) the plaintiff transferred certain properties to his daughter admitting that he had done so for the purpose of placing them beyond the reach of his creditors. *Id*. at 879. After the creditors no longer posed a threat, he asked his daughter to return the properties, but she refused. *Id*. The court invalidated the transfer finding that the purpose of the transfer, to shield the property from potential creditors, was illicit under Louisiana law. *Id*. at 881-82. In finding that Art. 2033 precluded recovery, the court stressed that the plaintiff transferor admitted that he had made the transfers in order to safeguard his properties from potential creditors and that to return the properties to him would be to participate in his attempt to manipulate the system. *Id.* at 882.

*Pique Severn Ave. P'ship v. Ballen*, 773 So. 2d 179 (La. App. 5th Cir. 2000) involved a claim of a lessor against real estate brokers for the return of commissions paid to the brokers. *Id*. at 180. Although the brokers did not have a valid brokers license when the contract was formed, the court refused to grant summary judgment in favor of the lessor and allow the lessor to recoup its expenses. *Id*. at 181. The court found that although the brokers may have lacked a valid license, an issue of fact remained as to

whether under Art. 2033 the lessor was precluded from recovering the commissions because he knew or should have known that as a result of the brokers' lack of a proper license, the contract was null. *Id.*

Finally, in *Moore v. Smith*, 521 So. 2d 742 (La. App. 2d Cir. 1988) the plaintiffs renounced their interests in their mother's succession. They did so because their father, who then inherited the property in their place, promised to later leave the property to them in his will. *Id.* at 743. The plaintiffs then sued to recover the property from their father when they found out he had changed his will leaving all of the property to his second wife. *Id.* The court found that the contract between the plaintiffs and their father was prohibited under Louisiana law because it dealt with the succession of a living person. As a result, the contract was absolutely null. *Id.* at 743-44. The court then addressed whether the plaintiffs could recover the property from their father. In determining whether the second paragraph of Art. 2033 precluded recovery, the court stated the following:

> If the plaintiffs knew that the contract was prohibited, they could not be allowed to assert their wrongdoing to claim a benefit from it. However, the record is completely void of evidence to support the supposition that the plaintiffs knowingly embarked on an illegal scheme...This is clearly not a case of the plaintiffs "alleging their own turpitude."

*Id.* at 744. Thus, the court did not preclude the plaintiffs from

17

recovering under Art. 2033. *Id*. at 745.

The Court finds that given Louisiana Supreme Court precedent and cases interpreting Art. 2033, the proper question for determining whether Defendants are precluded under Art. 2033 from recovering amounts already paid is whether Defendants entered into the contract in bad faith, and whether they knew or should have known that as a result of Trade-Winds' lack of a license, the contract would be deemed a nullity. Although the Plaintiff contends that Defendants were clearly aware of the fact that Trade-Winds lacked a license at the time the contract was formed, the Court finds that whether Defendants knew or should have known that as a result of this defect, the contract was null is a question of fact. *See Pique Severn Ave. P'ship v. Ballen*, 773 So. 2d 179, 181 (La. App. 5th Cir. 2000) (whether lessor knew that as a result of defect, the contract was an absolute nullity, and whether lessor was, therefore, precluded under Art. 2033 from recovering its performance already rendered was an issue of fact); *"We the People" Paralegal Serv., LLC v. Waltey*, 766 So. 2d 744, 749 (La. App. 2d Cir. 2000) (whether the plaintiff knew or should have known that the fee-splitting arrangement which violated the Rules of Professional Conduct was a defect that caused the contract for paralegal services to be a nullity was a factual determination to made based on the evidence). Thus, summary judgment on the issue of Defendants' recovery of sums paid in excess of Trade-Winds'

costs is improper at this time.

Accordingly,

**IT IS ORDERED** that Defendant/Counter-Claimants Stewart Development, LLC and Travelers Indemnity Company of Connecticut's Motion for Partial Summary Judgment on the Application of Louisiana Civil Code Article 2033 is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff Trade-Winds Environmental Restoration, Inc.'s Motion for Partial Summary Judgment Dismissing Counter-Claims Filed by Stewart Development, LLC and Travelers Indemnity Company of Connecticut is **DENIED**.  Whether the "no recovery" provision of Art. 2033 precludes recovery by the Defendants in this case is an issue of fact.

New Orleans, Louisiana this 6th day of August, 2008.

_____
UNITED STATES DISTRICT JUDGE