| | |
|---|---|
| TRADE-WINDS ENVIRONMENTAL RESTORATION, INC. | CIVIL ACTION |
| | NO. 06-3299 |
| VERSUS | SECTION B(2) |
| FRANK STEWART, JR, STEWART DEVELOPMENT, L.L.C., AND STIRLING PROPERTIES, INC. | |

## ORDER AND REASONS

Before the Court is Third Party Defendant Commerce and Industry Insurance Company's ("C&I") Motion for Summary Judgment. (Rec. Doc. 228). The motion is opposed (Rec. Doc. 253). After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that C&I's Motion for Summary Judgment is **GRANTED**.

## BACKGROUND

Stewart Development, LLC ("Stewart Development") owned a building known as Heritage Plaza located in Metairie, Louisiana. Stirling Properties, Inc. ("Stirling") was the leasing manager and agent for Heritage Plaza, and Travelers Indemnity Company of Connecticut ("Travelers") issued an insurance policy to Stewart Development covering the Heritage Plaza property. Due to Hurricane Katrina, Heritage Plaza sustained water damage, which resulted in a mold problem that required remediation.

In September 2005, Stewart, acting through its identified agent

1

Stirling, entered into an agreement (Advanced Work Authorization) with Trade-Winds to conduct mold remediation and clean-up work within Heritage Plaza. In order to protect undamaged areas of the property, Trade-Winds attached plastic sheets to floors and walls within the building to function as containment barriers. According to Stewart, the adhesive products Trade-Winds used to attach the plastic sheets left a residue which caused damage to the floors and walls of those parts of the building that were not damaged by mold. Although Trade-Winds made efforts to remove the residue, Stewart asserts that its efforts were unsuccessful and took steps to repair and/or replace the allegedly damaged areas. This alleged damage due to adhesive/tape residue constitutes one of the claims Stewart and Travelers present in their Counter-Claim against Trade-Winds and Third Party Demand against Trade-Winds' insurer, C&I.

The subject of the present Motion for Summary Judgment is whether the alleged damage from the tape and/or adhesives is covered under Trade-Winds' policy with C&I. Trade-Winds' insurance policy with C&I covered "**property damage...caused by an occurrence** that takes place in the coverage territory". (Rec. Doc. 228-6 at 6, Section No. 1-1-b)(emphasis added). However, the coverage has the following exclusions:

j. Damage to Property

   Property damage to:

(5)     That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on our behalf are performing operations, if the property damage arises out of those operations.

(6)     That particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it.

(Rec. Doc. 228-5 at 5).

C&I argues that Trade-Winds' "work" at the Heritage Plaza included placing protective barriers in those parts of the building that were not damaged by mold. Consequently, C&I alleges that the damage caused by the adhesive is excluded from coverage under the C&I policy.  Trade-Winds denies causing damage to the wall coverings and carpet at Heritage Plaza during the remediation process and asserts that the current dispute which C&I seeks to resolve by Summary Judgment is between Stewart and Travelers, not Trade-Winds. Trade-Winds, Stewart, and Travelers all argue that the exclusions C&I alleges support its Motion for Summary Judgment do not apply because the alleged damage caused by placement of protective barriers was incidental to and did not arise out of the actual mold remediation work.

**DISCUSSION**

**A.    Summary judgment standard**

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits,

show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c))); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

## B. Coverage & Exclusions under the C&I Policy

The provisions of an insurance policy are interpreted in accordance with the law of the state in which the policy was delivered. *United Fire and Cas. Co. v. Hixson Brothers, Inc.*, 453 F.3d 283, 285 n. 4 (5th Cir. 2006); *Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659, 677 (stating, "we interpret the provisions in this insurance policy under Louisiana law since the contract was

delivered in Louisiana"). Both Trade-Winds and C&I are New York companies, and the insurance policy at issue was delivered in New York. Accordingly, the Court applies New York law in interpreting the provisions of the contract.

Under New York law, "[a]n insurer's obligation to indemnify an insured arises only when the insurance contract creates such a duty." *Amin Realty, LLC v. Travelers Property Casualty Company*, 2006 WL 1720401, at *3(E.D.N.Y. June 20, 2006)(*citing Jakobson Shipyard v. Aetna Cas. & Sur. Co.*, 961 F.2d 387, 389 (2d Cir. 1992)). When an insured has enough evidence to show that the loss incurred is covered under the insurance policy, the burden of proof shifts to the insurer to show that the damages incurred are excluded from coverage under the policy. *Amin*, 2006 WL 1720401, at *3.

The C&I policy covers property damage only if:

(1)     The bodily injury or **property damage is caused by an occurrence** that takes place in the coverage territory; and

(2)     The bodily injury or property damage occurs during the policy period.

(Rec. Doc. 228-6 at 6)(emphasis added).

The policy defines "occurrence" as "an accident, including, continuous or repeated exposure to substantially the same general harmful conditions." *Id*. However, the coverage has the following work product exclusions:

j. Damage to Property

Property damage to:

(5)    That particular part of real property on which you or any contractors or subcontractors **working directly or indirectly on our behalf are performing operations, if the property damage arises out of those operations.**

(6)    That particular **part of any property that must be restored, repaired, or replaced because your work was incorrectly performed on it**.

*Id.* at 5 (emphasis added). "Work" is defined as "[w]ork or operations performed by the insured or on the insured's behalf; and [m]aterials, parts, or equipment furnished in connection with such work or operations" and "includes [w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of the insured's work." *Id. at* 32.

C&I argues first that the alleged damages to Heritage Plaza did not arise from an "occurrence" as defined in the policy and therefore are not covered. Next, C&I argues that the protective work completed by Trade-Winds constitutes the work product of Trade-Winds and is therefore subject to the policy's exclusionary clauses. Trade-Winds, Stewart, and Travelers argue that the protective work was ancillary to the mold remediation project and is therefore an "occurrence" outside the scope of tee work product of Trade-Winds.[1]

_____

1 In particular, the objecting parties present arguments along the lines that the job of Trade-Winds was mold remediation, not painting or sheet rock repair to areas unaffected by mold.

New York courts have consistently held that "[t]he issuer of a commercial general liability policy is not a surety for a construction contractor's defective work." *Bonded Concrete, Inc. v. Transcontinental Ins. Co.*, 784 N.Y.S.2d 212, 212 (N.Y. App. Div. 2004)(*citing George Fuller Co. v. U.S. Fid. & Guar. Co.*, 613 N.Y.S.2d 152 (N.Y. App. Div. 1994)); *see also Amin Realty, LLC v. Travelers Property Casualty Company*, 2006 WL 1720401 (E.D.N.Y. June 20, 2006). Consequently, commercial liability policies have been construed to preclude claims for contractual liability of an insured for economic loss due to faulty workmanship or non-bargained for outcomes. *Bonded Concrete,* 784 N.Y.S.2d at 212(stating that the "purpose of commercial general liability policy is to provide coverage for tort liability for physical damage to others and not for contractual liability of insured for economic loss because product is not what the damage party bargained for")(*citing Hartford Acc. & Indem. Co. v. Reale & Sons*, 644 N.Y.S.2d 442 (N.Y. App. Div. 1996)).

In many cases involving commercial liability insurance policies, the insurer limits its liability by providing coverage only where there has been an "occurrence"[2] and by providing an extensive list of exclusions. *See George Fuller*, 613 N.Y.S.2d 152; and *Amin Realty,* 2006 WL 1720401, at *7 (stating, "as a result of operations

---

[2] "Occurrence" is a standard term found in many commercial general liability policies including Defendant's policy and is defined as "an accident, including, continuous or repeated exposure to substantially or same general harmful conditions." (Rec. Doc. 228-6 at 6).

by the insured and its sub-contractors on that particular part of the property on which the insured was working, the building/structure was damaged and had to be repaired," and finding that "[t]he damage is therefore excluded from coverage pursuant to the work-product exclusions in 2(j)(5) and (6)"); *see also Lauren Plaza Associates, Ltd. v. Gordon H. Kolb Developments, Inc.*, 12 F.3d 208 (5th Cir. 1993)(applying Louisiana law).

In analyzing insurance policy language similar to the C&I policy, courts often merge the analysis of the existence of an "occurrence" with determination of whether the damage was to property upon which the contractor worked, i.e. "work product." Most of the cases involve construction work, either of a building or a particular system, and a factual pattern allowing for a relatively clear distinction as to what surfaces constitute part of the contractor's work product, and are therefore not directly on point with the instant case, which involves alleged damage in the course of work that was ancillary to the main project and a treatment project rather than construction. The courts have typically found no "occurrence" or that the exceptions applied in cases involving damage to the thing the contractor was to construct. *See Hartford Acc.,* 644 N.Y.S.2d 442 (N.Y. App. Div. 1996)(contract for the construction of a sewage treatment facility; action for failure to construct in accordance with specifications; work product exclusion excluded coverage);

*Bonded Concrete*, 784 N.Y.S.2d 212, 212 (N.Y. App. Div. 2004)(contract for supply of concrete; action for coverage of damages due to defective concrete; work product exclusion excluded coverage, concrete itself was the product); and *Baker Residential, LLP v. Travelers Insurance Company*, 2004 WL 5641705 (N.Y. Sup. Ct. 2004)(contract for delivery and installation of support beams; action for failure to construct or maintain structural beams causing water damage and deterioration).

*George Fuller* offers some guidance that determines occurrence/work product from the perspective of the work the contractor agreed to perform. In *George Fuller*, the defendant was the general contractor hired to construct a building. The plaintiff alleged that the defendant failed to "adequately and properly . . . supervise the installation of the building's wood flooring and an aluminum curtain wall ... and to provide for the installation of a code-compliant water metering system," and further asserted that as a result, "the flooring buckled and cracked, rendering it unusable, the defective curtain wall and window installation caused widespread water infiltration into the building and the building's water metering plans had to be revised." 613 N.Y.S. 2d at 154. The court found that the damage did not constitute an "occurrence" as articulated in the insurance policy and that the dispute was essentially a contract dispute, regardless of whether the plaintiff

articulated its claims in terms of "negligent performance" or "negligent construction." *Id.* at 155. Specifically, the court stated:

> Whether examined in its totality or by a review of each cause of action, the . . . complaint does not allege an "occurrence" resulting in "property damage" as contemplated by the comprehensive general liability policy at issue. As is manifestly clear from a reading of the complaint, the asserted claims arise out of a contract dispute between the insured, a general contractor, and . . . the property owner, in which it is alleged that [the defendant], either as construction manager or general contractor, improperly supervised the installation of the flooring, curtain wall and windows and metering system. [The insurance] policy, however, does not insure against faulty workmanship in the work product itself but rather faulty workmanship in the work product which creates a legal liability by causing bodily injury or property damage to something other than the work product. The policy was never intended to provide contractual indemnification for economic loss to a contracting party because the work product contracted for is defectively produced.

> In any event, the allegations all relate to [the defendant's] failure to meet its contractual obligations. The third and fifth causes of action, although labeled "negligent performance" and "negligent construction", respectively, represent nothing more than a damage claim for the same breach of contract asserted in the other causes of action. A contract default under a construction contract is not transformed into an "accident, including continuous or repeated exposure to substantially the same general harmful conditions" by the simple expedient of alleging negligent performance or negligent construction.

> To interpret the policy [otherwise] would transform [the insurer] into a surety for the performance of [the defendant's] work. [The] liability policy was never intended to insure [the defendant's] work product or [the defendant's] compliance, as a general contractor or construction manager, with its contractual obligations.

*Id.* The *George Fuller* court went on to find that the exceptions also applied, stating that because the plaintiff's claims arose "out of defects in the building constructed by [the defendant] or the construction of which it managed pursuant to its contracts, the work product exclusion applie[d] to exempt these claims from coverage." *Id.* at 156.

Many of the cases in which the courts found that the damage was to items/surfaces outside the scope of the insured's own work product and thus not subject to the work-product exclusions involved contracts for repair or improvements to already existing structures and damage to portions of the building upon which the contractor performed no work at all. For example, in *Marine Midland v. Kosoff*, 400 N.Y.S.2d 959 (N.Y. App. Div. 1977), which involved a contract to perform repair work on an existing building, the court found that damage to the building that was a result of defective roofing work extended beyond the scope of the insured's work to the existing structure and was therefore covered as an occurrence. In *Apache v. Continental*, 528 N.Y.S.2d 448 (N.Y. App. Div. 1988), the contractor was hired to install foam insulation into an existing building. Gases escaping from the insulation allegedly caused damage to vapor barriers and roof membranes. The court found that although damage to the insured's own work product (the insulation) was excluded, damage that extended beyond the work-product, i.e. damage to roof

from the insulation gases, could be covered as an occurrence. See also *Lauren Plaza Associates, Ltd. V. Gordon H. Kolb Developments, Inc.*, 12 F.3d 208 (5th Cir. 1993)(applying Louisiana law)(subcontractor hired to construct roof; the court found that damage to "property other than the roof itself, the 'work product,'" was not subject to exclusion and therefore covered under the subcontractor's insurance policy).

The instant case, like the second set of cases, involves work on an already existing building. However, like the first set of cases, the damage allegedly caused was to surfaces upon which Trade-Winds directly (or indirectly through subcontractors) performed some work. Although the attaching of the protective barriers to undamaged areas of Heritage Plaza was an action distinct from mold removal/remediation, it was a necessary step in the mold remediation process, taken both to protect the surfaces as debris was removed and to prevent further mold damage. Furthermore, Plaintiffs specifically invoiced and contracted[3] for attaching the protective barrier sheets before the remediation process and removal after remediation. (See Rec. Doc. 254-3 at 6)(indicating that pursuant to the Advanced Work Authorization, Plaintiffs invoiced

_____

3 Though the Court found the contract void due to the fact that Trade-Winds was not licensed for mold remediation in Louisiana at the time of the agreement with Stewart, the Court finds the agreement helpful in determining whether the application of adhesive/tape for the erection of protective barriers falls within the work product of Trade-Winds.

Stewart for application of the protective barriers and were paid for said work). Accordingly, the attaching and taking down of the protective barrier sheets constituted part of the work product of Trade-Winds. (*See* Trade-Winds Daily Sheets, Rec. Doc. 254-3 at 6, Ex. 6). Additionally, the Court finds that the placing of protective barriers before and during the remediation work and the related choice of adhesive was not an "accident" but a direct result of the purposeful actions and choices of Trade-Winds.

Consequently, the Court finds that the alleged adhesive/tape damage to the walls and carpet of Heritage Plaza that were not affected by mold was not an "occurrence," and the Court further finds that work product exclusions j(5) and j(6) of the C&I policy apply and thus exclude from coverage alleged adhesive/tape residue damage to the walls and carpet of Heritage Plaza resulting from the placement and removal of containment barriers before, during, and after the mold remediation process. Accordingly,

**IT IS ORDERED** that C&I's Motion for Summary Judgment is **GRANTED**.

New Orleans, Louisiana this 24th day of August, 2009.

_____
UNITED STATES DISTRICT JUDGE